Next case on the docket is Keiko v. Anduze, you mispronounced that, number 5-10-423, and Mr. O'Neill, you may proceed when you're ready. May it please the Court, Counselor, my name is Lawrence O'Neill and I represent Alexander Anduze in this cause. This appeal follows for Mr. Anduze's conviction of predatory criminal sexual assault of a child and aggravated criminal sexual abuse following a jury trial. I would also like to point out that the jury found Mr. Anduze inactively on one count of predatory criminal sexual abuse of a child. Mr. Anduze raises two issues in this appeal. I intend to limit my presentation here to argument one, where Mr. Anduze claims that he was denied a fair trial because the trial court prevented him from challenging the complaining witness's credibility with a prior false accusation of criminal sexual abuse. The State's case against Mr. Anduze was based almost entirely on the credibility of the complaining witness, Mr. Anduze's 11-year-old stepdaughter, A.L., who accused Mr. Anduze of abusing her over a roughly 10-month period beginning in the summer of 2007, while the two lived together with Mr. Anduze's wife, Atina Anduze, their younger son, Gabriel, and a friend of Mr. Anduze's named Richard Gathers. The outcome of the trial depended largely on whether the jury believed A.L.'s accusations. A.L.'s credibility was the main issue at trial. Thus, challenging A.L.'s credibility was essential to Mr. Anduze's defense. In that regard, there was evidence available to Mr. Anduze that would have shown that A.L. had made a previous false accusation of sexual abuse against him. Generally, a defendant accused of sexual assault may introduce evidence that his accuser has previously made a false accusation of sexual abuse against him, as this evidence is relevant and probative and may be used to attack the credibility of that witness. The defendant should be given wide latitude in presenting evidence regarding the witness's prior false accusation, especially when the State's case rests almost entirely on the credibility of that witness. In fact, there is no evidence more probative in regards to a defendant's claim that the complainant is falsely accusing him of sexual abuse than evidence that the complainant had made a previous false claim against him. To show that A.L. had previously falsely accused Mr. Anduze of sexual abuse, Mr. Anduze intended to introduce Dr. Qureshi's psychiatric evaluation report related to an examination of A.L. in March 2006. How would you introduce the report? Dr. Qureshi's testimony. So he was going to testify? Yes, Your Honor. Mr. Anduze included the name of Dr. Qureshi on his discovery and attached Dr. Qureshi's report. The State filed a motion limiting the body admission of the reported trial. Defense counsel made an offer of proof regarding the probative substance of the report and how it was essential to show the prior false accusation. The report indicated that A.L. had accused Mr. Anduze of sexual abuse in 2001. A.L. also stated to Dr. Qureshi that she had never been sexually abused in the past. Thus, A.L.'s statement reflected in the report where she stated she had never been sexually abused established that her accusation of sexual abuse against Mr. Anduze in 2001 was false. Because this evidence was relevant and probative regarding A.L.'s credibility, it was admissible. Despite the well-accepted rule regarding the admissibility of prior false accusations of sexual abuse, the trial court granted the State's motion to eliminate the body admission of the reported trial or any reference to the contents of the report. The court found that the report was privileged and confidential under the Mental Health and Disabilities Confidentiality Act. Now let me just make a point clear here. You have not appealed that ruling itself. In other words, you're not saying that the trial court was wrong in its analysis of the Mental Health Confidentiality Act. You agree, I guess, that it did fall within that act. I mean, your argument is that his rightful participation trumps the act. Correct. I mean, I understand that, but as far as the judge reading and interpreting that act, you haven't directly challenged whether that was right or wrong. Well, Your Honor, well, impliedly, I am arguing that that act did not bar the admissibility of my rights. Where was the doctor from at this time? It was from the Jackson County area, I believe, Your Honor. I believe. I'm not sure. Pardon me, it wasn't out to Nebraska? No, it was not. This was a doctor who examined and treated A.L. when she lived in Southern Illinois in March of 2006. Okay, five years after what may have happened. That's correct. In 2001. That's correct. Well, Your Honor, I do not believe that this act had provided an absolute bar to… Did the defendant give that also? Could he text that? Pardon me, Your Honor? Could the defendant talk at the trial about the 2001? No, Your Honor. He could have, though, right? The defendant could have talked about the report? No, I believe the judge's order that barred the admission of the report barred any reference to the report. So, again, the only means available to Mr. Anduzzi to present the prior accusation and to establish that it was false was through Dr. Koreshi and the report. But, again, Your Honor, I think the court was incorrect in finding that this confidentiality act barred the admission of the report. And my primary argument is that the mental history of a witness is admissible to the extent that it bears upon the credibility of that witness's testimony, as that is a permissible area of impeachment. And when a statutory privilege comes in direct conflict with the defendant's right to confrontation, the statutory privilege must yield to the paramount rights of the defendant's confrontation rights. In other words, the accused's right to confrontation supersedes the statutory privilege. And, again, the statute does not provide an absolute bar of the admissibility of the report. The court should have ruled that the report was admissible after determining that the information was relevant and material regarding A.R.'s credibility and bias and prejudice against Mr. Anduzzi. Further, it is worth noting that the relevant information in the report was essentially non-mental health related information. It did not pertain to symptoms or diagnosis or treatment, but involved one fact related to a previous claim of sexual abuse. Thus, when balancing the interests of those involved here, statutory privilege versus defendant's rights to confrontation, the balance of the interests would favor Mr. Anduzzi and allow for admission of the report. Where do we head with this, then, on other privileges? Would the same rule apply to attorney-client privilege, priest-penitent privilege, marital privilege? Well, it would depend on the context here, Your Honor. In this case, we have a paramount constitutional right to confrontation. And in that context, that supersedes any type of statutory or any of the other… Well, that's what I keep hearing you say. That's why I'm asking. Any type of statutory privilege, those are all statutory privileges. Your Honor, in the context of a defendant's right to confrontation, now, I can see the judge may be allowed to conduct an in-camera or review the report to see if that evidence is relevant and material. And another reason that this case is particular, the privilege should not have been protected in this case, is that this case came down to the credibility of the witness. And so we would consider and balance the defendant's paramount right to confrontation and the fact that the State's case against Mr. Anduzzi was based almost exclusively on that complaining witness. And I think in this context, Mr. Anduzzi's confrontation rights outweigh any type of statutory privilege. I can't say that that would be the case in every privilege-related situation, Your Honor. Does the record reflect how this privilege document surfaced? No, it does not. It does not. I assume that perhaps Tina Anduzzi, Payol's mother, had the report, but it was attached to the defense's discovery, a list that Dr. Qureshi has as a witness. Again, this error cannot be considered harmless. Again, the main issue for the jury in the trial was evaluating A.L.'s credibility, and her testimony was crucial to the State's case. And evidence showing that A.L. had made a previous false claim regarding the same conduct that she was accusing Mr. Anduzzi in this present case cannot be considered harmless. Further, it is important to know that the jury found Mr. Anduzzi not guilty on one account, which suggests that the jury had problems or questions regarding A.L.'s credibility, and there is evidence in front of the trial that A.L. has a habit of perhaps lying or manipulating the truth. Thank you, Mr. Harris. We have an opportunity for rebuttal. Thank you, Law and Service. Shawna? Good morning, Your Honors. Counsel, I want to begin. There was a question raised as far as what could be admitted at trial. There was a dialogue between defense counsel and the court after the court gave its order that the report would not be admitted. Defense counsel asked, judge, just for a point of clarification, is the court also ruling that we can't go into the complaint made by the alleged victim in the state of Nebraska? The court, as I read the people's motion, that has nothing to do with anything other than the report of Dr. Karishi. And I'm making no ruling concerning what the defendant may present in his case. So, and that's in the record at 226. So, the defendant was not precluded from any cross-examination. The complainant did take the stand. He was not precluded during cross-examination from bringing up, asking her if she had ever made any prior allegations against the defendant. I would speculate that the report was brought to light because the complaint must have been brought to light, and there must have been some indiscovery. The report came down. So I assume defense counsel didn't ask her about the complaint? No, no, he didn't. And the judge's statement specifically always talked about Dr. Karishi and not the prior allegations. Correct. The motion in limine that the state made referred specifically to the report. It did not concern whether that prior complaint could be brought, could be brought on to trial. The people do not negate that a defendant may introduce evidence that his accuser has made a prior false allegation. But the key words there, it has to have been established that it was a false allegation. The contents of the report don't establish that. For one thing, Allie made those initial allegations when she was four. That report and that evaluation weren't conducted for five years after that when she was nine. The question, the statement that the defendant wanted to bring before the jury was when asked, have you ever been a victim of sexual abuse, she stated no. Given that there was that five-year lag, given that she was four when she made those original allegations, that statement cannot be considered proof that she made up the story in the beginning. She could have forgotten. It doesn't all back down to the weight, though, as opposed to necessarily the weight. Certainly. It goes to weight, and the weight comes in when you're balancing her right to privacy with the defendant's confrontation rights. If we're going to breach her right to privacy, and as the trial court pointed out, the statute, the Mental Health and Developmental Disabilities Act, the statute has a list of exemptions. This case didn't fall into any of those exemptions. One of those exemptions is if it was a court-ordered psychiatric report, that falls under the exemption. This wasn't court-ordered. So before the trial court is going to breach her privacy rights, it has to see what is the weight, as Your Honor said, what is the weight of the evidence she's trying to admit. Here, it was too speculative, it was too remote. That original allegation was when she was four. The allegation at trial is when she was 11. That reduces the probative value, that time between when the report was made and when the original allegation was made reduces the relevance value. So certainly, there are situations when that kind of information could have been brought in. But the cases that the defendant cites in this brief, we don't have similar facts. We don't have this seven-year gap of time. We don't have this statutory protected document. And that's really what distinguishes this case from all the other cases. Did Tina Ann Ducey testify? Yes, Your Honor. And was she asked about this prior alleged false allegation? I am not sure. Is there anything that prevented her from being asked about it? No. As far as the motion and Lemony, as I read it, is concerned, nothing prevented her or her daughter from being asked about it. In looking to the sufficiency of the evidence issue then, counsel reiterates that Allie's credibility was the only determining factor in the defendant's conviction. That's not true. The most damaging evidence was his own confession. There was a written confession, and I'll just read a portion of it, that I have had unwanted approaches by my daughter and eventually succumbed to her requests. She had touched my genitals, played with them, even after I said no. As a result of that, there was ejaculation. It happened twice, approximately a year ago. Now, to say that his convictions were based entirely on this testimony of the child who he says forced him to do it, or however he phrases it, is inaccurate. Not only was there that written confession, there were these incriminating statements that he made to the officers where he said that she aroused me, and I told her no, she didn't listen. These on their own certainly could have provided a basis for conviction. Allie's testimony merely corroborated that. The defendant argues that, well, she was incredible because she had recanted her story. But you look at the framework of that recantation. She stated that her mother had told her she was breaking the family apart, it was all her fault. Allie testified it was my mother's birthday. I felt bad. The police officer stated that that recantation lasted about a few minutes. She started crying. She told them, I just don't want my mother to hate me. The jury heard about how the mother treated the daughter after she made allegations. The mother visited her three times in the course of two years. Clearly, the mother didn't believe the child. I think that she was removed from the home. Yes, yes, yes. At least as far as the record only shows, prior to the trial, for those two years she was in protective custody. Clearly the jury had much more than the child's testimony to go on. But even the child's testimony is credible under the circumstances. The defendant argues then that his confession wasn't voluntary, and I won't belabor that issue because it's in the people's brief about why there really are no grounds for involuntariness. He stated that I knew what was going on. I knew I was free to leave. He had driven himself to the police station. He could have gone back home. The defendant in his testimony recanted the confession. Yes. He stated that I felt like they weren't listening to me. I thought that no matter what I said, they seemed to believe that I was guilty. I just wanted to get out of there. I wanted to get out of there. I said what I had to say to leave. However, the testimony of the police officers indicates that he said he was fine. We told him you can leave. You want a break? You want some food? You want something to drink? There's no evidence that his confession was anything but voluntary, that it was coerced in any way. Based on the fact that we have a situation where there was a confidential document, it cannot be characterized that the trial court abused its discretion. Whether another trial court would have weighed the factors differently is irrelevant to say that it was an arbitrary decision when the court had all these factors in front of it, a seven-year lag in time, a five-year lag in time until the report was made, and this confidential report that was not court-ordered, it can't be characterized as an abuse of discretion. For those reasons, we ask that you affirm. Thank you, Commissioner. Mr. Levine? Your Honor, the trial court was wrong in determining that the statute provided a bar to the admission of the report. The court should have determined whether the report was relevant and probative regarding A.L.'s credibility. And in determining that, the case law is clear that a prior false accusation is relevant and material. Now, the only possible, you know, there's an issue in determining that and evaluating whether the evidence was, the report was probative or relevant, and it does involve the remoteness of the claim. But as Your Honor stated, that the remoteness of time pertains to the admissibility, does not pertain to the admissibility of the evidence because it goes to the weight of the evidence. The state would have had an opportunity to point out and argue about the time frame. And in that context, the issue is important to note that this is a matter of constitutional right to computation. So in considering the remoteness and the paramount concern of protecting the defendant's right to computation, Mr. Anduzzi's computation rights would have been best protected by presenting this evidence to the jury and let the jury make a determination as to the weight and merit and value of their prior accusation, considering its remoteness and the other problems that the state would have had the opportunity. Well, how do you respond to the state's statement that he wasn't precluded from asking about the prior false allegation? He was precluded from asking about Dr. Qureshi's report? Well, Your Honor, in order to, you're assuming then, I guess, that he could have, you're saying that defense counsel could have asked A.L. on cross-examination. They tried. Well, Your Honor, as defense counsel made in his offer of proof, stated in his offer of proof, the only way that he could have established that was through the report. I think it's too speculative to say that A.L. would have elicited that information or accurately elicited that information on cross-examination. When we're considering the computation protections of Mr. Anduzzi, the proper course would have been to allow Mr. Anduzzi to present that through his witness, Dr. Qureshi. What you're saying is if he asked her, she denied that that ever happened. He's got nothing. He's got nothing. He can't use it. Now, is there anything in the record that says either way whether Tina Anduzzi knew about this prior false report? No, Your Honor, she did not testify about the report. So we don't know either way? I do not know. I do not recall her referencing or have anything in the record that shows that she had knowledge. Because if she did have knowledge, certainly she could have testified about it. Well, correct, I guess, Your Honor. But there's nothing in the record that I recall that she had known of or had access to that. And it's important to note here when balancing the interests here and considering whether this evidence is relevant and probative, that A.L.'s testimony, the evidence came out regarding A.L.'s propensity or habit of lying. And opposing counsel mentioned the fact that she had recanted her initial accusation against Mr. Anduzzi. And opposing counsel mentions because she was concerned that she was breaking up the family and her mother was sad about that. I think that shows that A.L. is a person who is capable of lying and manipulating the truth in order to obtain their own interest and concerns. Certainly, the question of her credibility was at issue. She was shown to have recanted a statement, an allegation against Mr. Anduzzi. And the fact that she had made a, Mr. Anduzzi was trying to present evidence that she had made a prior, previous false claim against her, certainly cannot be considered harmless when the State's case primarily rested on whether the jury believed A.L.'s accusations. Your Honors? Did he confess himself to the police? He didn't confess to committing the acts that were contained in the charge of predatory criminal sexual assault. And the two different sexual conduct, yes, he did not admit to those. And the jury acquitted him on one of those counts. The privilege that should not have been, did not bar the admission of this testimony, Your Honor, of this report. Mr. Anduzzi asks Your Honors to reverse his conviction and remand the cause for a new trial. Thank you both for your briefs and your arguments. We'll take this matter under advisement and issue a decision in due course.